# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37354

STATE OF IDAHO,

        **Plaintiff-Appellant,**

v.

JOHN ALAN SCHULZ,

        **Defendant-Respondent.**

)
)
)
)
)
)
)
)
)
)
)
)

Boise, September 2011 Term

2011 Opinion No. 122

Filed: November 30, 2011

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. The Honorable Lansing L. Haynes, District Judge.

The order of the district court is <u>affirmed</u>.

The Honorable Lawrence G. Wasden, Idaho Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Greg S. Silvey, Star, Idaho, argued for respondent.

---

J. JONES, Justice.

This is an appeal from the dismissal of an information against John Schulz, who was charged with felony domestic battery under I.C. § 18-903 and -918(2) and attempted strangulation under I.C. § 18-923 of his 15-year-old daughter, E.S. Both charges required the State to prove that E.S. was Schulz' "household member" as defined in I.C. § 18-918(1)(a). The district court granted Schulz' motion to dismiss based on the fact that she did not fall within that definition. Because we find that the definition of "household member" plainly limits its application to intimate partners and, thus, does not extend to a child living with her father, we affirm.

## I.
## FACTUAL AND PROCEDURAL HISTORY

John Schulz was charged in Kootenai County in July of 2009 with felony domestic battery under I.C. § 18-903 and -918(2) and attempted strangulation under I.C. § 18-923 for allegedly injuring his 15-year-old daughter, E.S. Following a preliminary hearing probable cause for the charges was found, based on E.S.' testimony. The State thereafter filed an information that was

1

consistent with the charges in the complaint but which amended the dates of the alleged incidents to match the preliminary hearing testimony.

According to E.S.' testimony, she was living with Schulz on a part-time basis under a shared custody arrangement with E.S.' step-mother at the time of the charged incidents. The felony domestic battery charge was based on an incident allegedly occurring April 12, 2009, where Schulz made E.S. lie on the ground while he struck her with a belt 10 to 15 times. The attempted strangulation charge was based on a second incident allegedly occurring June 28, 2009, where Schulz grabbed E.S. by the neck and squeezed for about one minute.

Schulz filed a motion to dismiss the information, asserting that an element of each charge is that the victim be a "household member" as defined in I.C. § 18-918(1)(a) and that E.S. did not meet that definition because it did not extend to the parent-child relationship. Schulz asserted that the term "cohabiting" within the definition of "household member" is ambiguous and, thus, turned to statutory construction to support his argument that the definition only applies to intimate partners. The State countered that the definition of "household member" unambiguously includes anyone living together, as it was interpreted by the Idaho Court of Appeals in *State v. Hansell*, 141 Idaho 587, 114 P.3d 145 (Ct. App. 2005).

The district court entered its Memorandum Decision Re: Defendant's Motion to Dismiss on January 12, 2010, granting Schulz' motion to dismiss. The district court found that: (1) the term "cohabiting" made the definition of "household member" ambiguous; (2) the *Hansell* interpretation was non-binding *dicta* as applied to the present case; (3) a plain-meaning reading of "cohabiting" to include all persons living under the same roof would lead to absurd results; (4) the text and legislative history of the definition indicated a focus on intimate relationships to the exclusion of the parent-child relationship; and (5) the Legislature provided child victims protection from parents separately under the injury to child statute, I.C. § 18-1501. On January 14, 2010, the district court entered its Order to Dismiss reflecting the decision in its prior memorandum. The State filed its Notice of Appeal on January 21, 2011, designating the district court's Memorandum Decision as the document from which it was appealing, rather than the subsequent Order to Dismiss. The State filed an amended notice of appeal on December 15, 2010, designating the Order to Dismiss along with the Memorandum Decision as the decisions from which the appeal was taken.

## II.
## ISSUES ON APPEAL

I.      Whether this Court has jurisdiction to hear this appeal?

II.     Whether the district court erred in dismissing the State's charges on the ground that the definition of "household member" in I.C. § 18-918(1)(a) does not extend to a daughter living with her father?

## III.
## DISCUSSION

### A.     Standard of Review

Whether an appeal is taken from an appealable order implicates the subject matter jurisdiction of this Court; thus, it can be raised at any time by the parties or by the Court *sua sponte*. *State v. Loomis*, 146 Idaho 700, 702, 201 P.3d 1277, 1279 (2009). Further, it is a question of law that this Court reviews *de novo*. *T.J.T. v. Mori*, 148 Idaho 825, 826, 230 P.3d 435, 436 (2010). The interpretation of a statute is also a question of law this Court reviews *de novo*. *State v. Anderson*, 145 Idaho 99, 103, 175 P.3d 788, 792 (2008).

### B.     This Court has jurisdiction over this appeal.

On appeal, Schulz asserts that this Court lacks jurisdiction to hear this appeal because the State's Notice of Appeal designates the district court's January 12, 2011 Memorandum Decision Re: Defendant's Motion to Dismiss, rather than its January 14, 2011 Order to Dismiss, as the document from which the appeal is taken. Schulz argues that the Memorandum Decision is not an appealable order under Idaho Appellate Rule 11(c), so the State's reliance on that decision in its notice is fatal to this Court's subject matter jurisdiction. The State counters with two related but distinct alternative arguments: (1) the Memorandum Decision is in substance a final, appealable order in compliance with Rule 11(c) despite the fact that it lacks the proper title; and (2) regardless of the status of the Memorandum Decision, the appeal was timely filed from the date of the undeniably final Order to Dismiss and, thus, any improper designation was a non-jurisdictional defect.

The Memorandum Decision is appealable as "[an] order granting a motion to dismiss an information or complaint." I.A.R. 11(c)(3). The concluding paragraph in the Memorandum Decision states:

> It is for the above cited reasons that this Court Grants Defendant's Motion to Dismiss, and specifically finds that the legislative history and intent of I.C. § 18-918 does not extend domestic violence protections to crimes committed by parents

3

against their minor children. The alleged conduct of Defendant is prosecutable under other criminal law statutes.

"Whether an instrument is an appealable order or judgment must be determined by its content and substance, and not by its title." *Howell v. Reimann*, 77 Idaho 84, 87, 288 P.2d 649, 651 (1955). Because the Memorandum Decision clearly grants Schulz' motion to dismiss the information, it is an appealable order under I.A.R. 11(c)(3).

**C.** **The district court did not err in dismissing the State's charges because the definition of "household member" plainly limits its application to intimate partners and, thus, does not extend to a child living with a parent.**

On appeal, the State argues that the definition of "household member" unambiguously includes a child living with her parent because the plain meaning of "cohabiting" within that definition contemplates anyone living together and, therefore, the district court erred in engaging in statutory construction. The State relies heavily on the Court of Appeals' decision in *State v. Hansell*, 141 Idaho 587, 114 P.3d 145 (Ct. App. 2005), which interpreted the statute accordingly. Schulz responds that (1) the definition is ambiguous, (2) the *Hansell* interpretation is overbroad and would lead to absurd results, (3) the text and legislative history indicate a limitation to intimate relationships, (4) the Legislature provided protection for children elsewhere in the code, and (5) the rule of lenity requires construction in the defendant's favor.

The crimes of felony domestic battery under I.C. § 18-903 and -918(2) and attempted strangulation under I.C. § 18-923 both require that the victim be the defendant's "household member" as that term is defined in I.C. § 18-918(1)(a). That section defines "household member" as

> a person who is a spouse, former spouse, or a person who has a child in common regardless of whether they have been married or *a person with whom a person is cohabiting*, whether or not they have married or have held themselves out to be husband or wife.

I.C. § 18-918(1)(a) (emphasis added). The parties' focus on appeal is the only section of the definition arguably applicable to a child victim of a parent, "a person with whom a person is cohabiting." Thus, at issue is the meaning of "cohabiting."

In order to determine this issue, we employ the following principles of statutory interpretation:

> The objective of statutory interpretation is to derive the intent of the legislative body that adopted the act. Statutory interpretation begins with the literal language

4

of the statute. Provisions should not be read in isolation, but must be interpreted in the context of the entire document. The statute should be considered as a whole, and words should be given their plain, usual, and ordinary meanings. It should be noted that the Court must give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. When the statutory language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and the Court need not consider rules of statutory construction.

*Farber v. Idaho State Ins. Fund*, 147 Idaho 307, 310, 208 P.3d 289, 292 (2009) (internal citations omitted).

We agree with the State that the statute is unambiguous but disagree with the State's contention that cohabiting extends to all persons living in the household. The term "cohabiting" is a long-recognized term of art plainly denoting an intimate relationship. *See State v. Oar*, 129 Idaho 337, 340, 924 P.2d 599, 602 (1996) (quoting *Lorillard v. Pons*, 434 U.S. 575, 583 (1978) ("[W]here words are employed in a statute which had at the time a well-known meaning at common law … they are presumed to have been used in that sense unless the context compels to the contrary.")). Since before statehood, Idaho courts have interpreted the term in this way. *E.g. U.S. v. Kuntze*, 2 Hasb. 480, 21 P. 407 (Idaho Terr. 1889) (interpreting the term "cohabit" in a federal bigamy statute to mean "to dwell or live together as husband and wife"). Further, the term was one of the touchstone requirements for proof of a common law marriage in Idaho, being used to describe a couple who lived together in intimacy. *See Metropolitan Life Ins. Co. v. Johnson*, 103 Idaho 122, 127, 645 P.2d 356, 361 (1982) (holding that a common law marriage could be proven in part by "cohabitation, reputation and the manner in which the couple characterize their relationship").[1]

Dictionary definitions also demonstrate that "cohabiting" plainly denotes an intimate relationship. For example, although Webster's Dictionary secondarily defines the term "cohabit" "to live together or in company," its primary definition is "to live together as or as if husband and wife usu. without a legal marriage having been performed," which echoes the common law marriage usage noted above. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 440 (2002). Moreover, Black's Law Dictionary defines "cohabitation" as "the fact or state of

---

[1] The term is also given such meaning in jurisdictions across the country. *E.g. Allen v. Allen*, 966 S.W. 658 (Tex. Ct. App. 1998) (discussing various meanings of "cohabitation" under Texas law, all of which denote a sexual relationship); *Kripp v. Kripp*, 784 A.2d 158, 163 (Pa. Super. Ct. 2001) (same); *Biggins v. Burdette*, 708 S.E. 2d 237, 244 (S.C. Ct. App. 2011) (determining that "continued cohabitation" requires living together in a romantic relationship).

living together, esp. as partners in life, usu. with the suggestion of sexual relations." BLACK'S LAW DICTIONARY (9th ed. 2009). An older Black's definition is even more limiting, defining "cohabitation" as "a mutual assumption of those marital rights, duties and obligations which are usually manifested by married people." BLACK'S LAW DICTIONARY 260 (6th ed. 1990).

In addition, the surrounding text of the definition only supports this interpretation and shows us no reason why we should read decades of common-law meaning out of the word at issue. *Oar*, 129 Idaho at 340, 924 P.2d at 602. In determining legislative intent, this Court applies the maxim *noscitur a sociis*, which means "a word is known by the company it keeps." *State v. Hammersley*, 134 Idaho 816, 821, 10 P.3d 1285, 1290 (2000). Here, all examples of "household member" preceding the ambiguous phrase—"spouse, former spouse, or a person who has a child in common regardless of whether they have been married"—denote a marital or intimate relationship. I.C. § 18-918(1)(a). In addition, the phrase at issue is followed by the qualifying phrase "whether or not they have married or have held themselves out to be husband or wife." *Id.* That qualifying phrase indicates legislative intent that "a person with whom a person is cohabiting" is to add to the definitional list any intimate relationships that do not rise to the marital or co-parental statuses already listed, such as boyfriend-girlfriend relationships. Indeed, if the Legislature had intended "cohabiting" to include anyone living under the same roof, regardless of relationship, there would be no need for the qualifying phrase at all.

The holding in *Hansell*, on which the State heavily relies, does not affect our conclusion because it is an incorrect reading of the statute and, in any event, decisions of the Court of Appeals are not binding on this Court.

In sum, because the term "cohabiting" in the definition of "household member" plainly does not apply in the absence of an intimate relationship, we find it does not extend to a child victim of her father's violence. Therefore, the district court was correct in determining that E.S. was not Schulz' "household member" as required to support the charges against him under I.C. §§ 18-903, -918(2), and -923.

## V.
## CONCLUSION

Because we find that E.S. was not a "household member" within the meaning of I.C. § 18-918(1)(a), we affirm the district court's dismissal of the charges against Schulz.

Chief Justice BURDICK, and Justices EISMANN, W. JONES and HORTON CONCUR.

6